# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Marco A. C.-P., | Case No. 20-cv-1698 (JRT/TNL) |
| Petitioner, | |
| v. | **REPORT & RECOMMENDATION** |
| William Barr, U.S. Attorney General, | |
| Chad Wolf, Acting Secretary, Department of Homeland Security, | |
| Tony Pham, Acting Director, Immigration and Customs Enforcement,[1] | |
| Peter Berg, Director, St. Paul Field Office, Immigration and Customs Enforcement, and | |
| Joel Brott, Sheriff, Sherburne County, | |
| Respondents. | |

Paul Abraham Dimick and Teresa Nelson, American Civil Liberties Union of Minnesota, P.O. Box 14720, Minneapolis, MN 55414; and Bruce Nestor, De León & Nestor, LLC, 3547 Cedar Avenue South, Minneapolis, MN 55407 (for Petitioner); and

Chad A. Blumenfield, Assistant United States Attorney, United States Attorney's Office, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415 (for Respondents Barr, Wolf, Pham, and Berg).

---

[1] Pham is the current "Senior Official Performing Duties of the Director" of U.S. Immigration and Customs Enforcement. *ICE Leadership*, U.S. Immigration & Customs Enf't, U.S. Dep't of Homeland Sec., https://www.ice.gov/leadership (last visited Nov. 23, 2020). The Court has substituted Pham for Matthew Albence. *See* Fed. R. Civ. P. 25(d).

1

# I. INTRODUCTION

This matter comes before the Court on Petitioner Marco A. C.-P.'s Amended Petition for Writ of Habeas Corpus ("Amended Petition") (ECF No. 4) under 28 U.S.C. § 2241.[2] The Petition has been referred to the undersigned for a report and recommendation to the district court, the Honorable John R. Tunheim, Chief District Judge for the United States District Court for the District of Minnesota, under 28 U.S.C. § 636 and D. Minn. LR 72.1.

Based upon the record, memoranda, and proceedings herein, **IT IS HEREBY RECOMMENDED** that the Petition be **GRANTED IN PART** and **DENIED IN PART** as set forth below.

# II. BACKGROUND

Petitioner, born in 1991, is a native and citizen of Mexico. (Am. Pet. ¶ 39; Decision of the Immigration Judge ("IJ Decision") at 2, 4, ECF No. 4-2.) Petitioner came to the United States in 2004 and, since that time, has only left the country once—to attend his grandfather's funeral in Mexico in 2010. (Am. Pet. ¶ 43; IJ Decision at 5.) On August 14, 2010, Petitioner was apprehended attempting to reenter the United States. (*Id.*) Petitioner was ordered removed the same day and removed to Mexico the following day. (*Id.*) Petitioner reentered the United States shortly thereafter. (Am. Pet. ¶ 44; IJ Decision at 5.)

---

[2] On November 13, 2020, Petitioner filed a Motion for Expedited Consideration ("Petitioner's Motion") (ECF No. 9) on the basis of a COVID-19 outbreak at the Sherburne County Jail where he is housed. Petitioner asks the Court to "[a]djudicate the petition for writ of habeas corpus expeditiously and render a decision within ten days" of November 13. (Pet.'s Mot. at 8.) Petitioner specifies that he "is not yet seeking his immediate release before this Court . . . but rather the far more limited relief of expedited consideration of his petition." (Pet.'s Mot. at 6.) As the Court is issuing its Report and Recommendation within the ten days requested, Petitioner's Motion will be denied as moot.

### A. Withholding-Only Proceedings

On September 10, 2019, Petitioner was arrested and later charged in state district court in Otter Tail County, Minnesota, with fifth-degree possession of a controlled substance. (Am. Pet. ¶ 53.) Two days later, a state court judge granted Petitioner's release on bond and he was turned over to the International Falls Border Patrol the same day. (Am. Pet. ¶ 54; Decl. of Immigration and Customs Enforcement Deportation Officer Eric J. O'Denius ("O'Denius Decl.") ¶ 5, ECF No 7.) The following day, September 13, 2019, Petitioner was turned over to Immigration and Customs Enforcement ("ICE"). (O'Denius Decl. ¶ 5.)

On September 13, 2019, the Department of Homeland Security ("DHS") informed Petitioner that it intended to reinstate the prior 2010 order of removal pursuant to 8 U.S.C. § 1231(a)(5). (Am. Pet. ¶ 55; IJ Decision at 2.) Petitioner expressed fears of returning to Mexico and his case was referred to an asylum officer to conduct a reasonable fear review. (*Id.*) The asylum officer found that Petitioner failed to establish a reasonable possibility of persecution or torture and referred the case to an Immigration Judge ("IJ"). (Am. Pet. ¶ 56; IJ Decision at 2.) On October 24, 2019, the IJ conducted a reasonable fear review hearing, vacated the asylum officer's determination, and placed Petitioner in withholding-only proceedings. (Am. Pet. ¶ 57.) Petitioner timely filed applications for withholding of removal under 8 U.S.C. § 1231(b)(3) or the Convention Against Torture ("CAT"). (Am. Pet. ¶ 61; IJ Decision at 3.)

Petitioner subsequently requested a bond hearing before the IJ to review his custody status. (Am. Pet. ¶ 58; Motion for Bond Hearing at 1-4, ECF No. 4-5.) The IJ denied

3

Petitioner's request to be released on bond because she did not have the authority to release an individual in withholding-only proceedings. (Am. Pet. ¶ 60; Order of the Immigration Judge with Respect to Custody at 1, ECF No. 4-6.)

On March 6, 2020, after a hearing on the merits, the IJ granted Petitioner's application for withholding of removal under 8 U.S.C. § 1231(b)(3), or, in the alternative, under Article 3 of the CAT. (Am. Pet. ¶ 62; IJ Decision at 21.) DHS filed a timely appeal of the IJ's decision with the Board of Immigration Appeals ("BIA"). (Am. Pet. ¶ 64; Response to Habeas Petition ("Resp. to Pet.") at 9, ECF No. 6.) Based on the record before the Court, that appeal remains pending before the BIA.

### B. 180-Day Custody Review

On March 27, 2020, DHS completed Petitioner's 180-day custody review. (Am. Pet. ¶ 63; Decision to Continue Detention at 1-3, ECF No. 4-7.) DHS determined that Petitioner would not be released as he had not demonstrated that he would not "[p]ose a significant risk of flight pending [his] removal from the United States." (Decision to Continue Detention at 1 (citing 8 C.F.R. § 241.4(e), (f), (g)).) DHS also noted that if the BIA "reverses the IJ's decision, [Petitioner's] removal to Mexico is expected to occur in the reasonably foreseeable future." (*Id.*) Based on Petitioner's risk of flight and DHS's view of the likelihood of Petitioner's removal, Petitioner was "to remain in ICE custody pending [his] removal from the United States." (*Id.*) Petitioner has been in federal custody, except for six days at the end of 2019, since approximately September 12, 2019.[3] (Am.

---

[3] According to Federal Respondents, Petitioner was briefly in the custody of Otter Tail County from December 26 through December 31, 2019, when he was returned to ICE custody. (Resp. to Pet. at 8.)

4

Pet. ¶ 54; O'Denius Decl. ¶ 5.) He is currently housed at the Sherburne County Jail. (Am. Pet. ¶ 8.)

### C. Habeas Proceedings

On August 4, 2020, Petitioner filed his Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241, challenging his ongoing detention. (*See generally* Pet., ECF No. 1.) The Amended Petition was filed two days later. (*See generally* Am. Pet.) In the Amended Petition, Petitioner asserts that his continued detention without a bond hearing violates the Immigration and Nationality Act ("INA"), or, in the alternative, his right to due process. (*See generally* Am. Pet. ¶¶ 3-7; 67-134.)

#### 1. Circuit Split Over Aliens Pursuing Withholding-Only Relief While Detained Under Reinstated Removal Orders

To provide context for Petitioner's arguments, there is currently a split among the circuit courts of appeal as to what provision of the INA governs the detention of aliens detained under reinstated removal orders who are pursuing withholding-only relief. The Supreme Court recently granted certiorari to resolve whether 8 U.S.C. § 1226 or 8 U.S.C. § 1231 governs the detention of these aliens, and subsequently their right to individualized bond hearings. *See Guzman Chavez v. Hott*, 940 F.3d 867, 873 (4th Cir. 2019), *cert. granted sub nom. Albence v. Guzman Chavez*, --- S. Ct. ---, 2020 WL 3146678 (June 15, 2020).

The Second and Fourth Circuits have held that these aliens are detained under 8 U.S.C. § 1226, the statute governing detention prior to a final order of removal ("pre-removal"). *Guzman Chavez*, 940 F.3d at 882; *Guerra v. Shanahan*, 831 F.3d 59, 64 (2d

Cir. 2016). The Third, Sixth, and Ninth Circuits have conversely found that 8 U.S.C. § 1231, the statute governing detention following a final order of removal ("post-removal"), applies to these aliens. *Guerrero-Sanchez v. Warden York Co. Prison*, 905 F.3d 208, 219 (3d Cir. 2018); *Martinez v. Larose*, 968 F.3d 555, 564 (6th Cir. 2020); *Padilla-Ramirez v. Bible*, 882 F.3d 826, 831-33 (9th Cir. 2017).

### 2. Petitioner's Claims

Petitioner asks this Court to find that § 1226 governs his detention and order, as the Second and Fourth Circuits have, that he receive a bond hearing pursuant to 8 U.S.C. § 1226(a). (Am. Pet. ¶¶ 5, 67-89, 135-37.) In the alternative, if this Court finds that § 1231(a) applies to his detention, Petitioner asks this Court to adopt the Third and Ninth Circuits' limiting construction of 8 U.S.C. § 1231(a)(6) and order that he receive a bond hearing before an IJ where DHS bears the burden to prove, by clear and convincing evidence, that continued detention is necessary to prevent Petitioner's flight or because Petitioner is a danger to the community. (Am. Pet. ¶¶ 6, 90-120, 138-40.) Lastly, Petitioner argues that even if this Court finds he is not entitled to a bond hearing under either provision of the INA, he is nonetheless entitled to a bond hearing as his prolonged detention without a hearing violates his fundamental right to due process. (Am. Pet. ¶¶ 7, 121-34, 141-43.) Petitioner also seeks an award of attorney fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d) and 5 U.S.C § 504 *et seq.*, if they are applicable in this case. (Am. Pet. at p. 58.)

### 3. Federal Respondents' Response

Respondents William Barr, Chad Wolf, Tony Pham, and Peter Berg (collectively, "the Federal Respondents") filed a Response to the Habeas Petition. (*See generally* Resp. to Pet.[4]) The Federal Respondents assert that according to both the INA's statutory text and structure, as well as Congress's intent, Petitioner is detained under § 1231, the post-removal statute. (Resp. to Pet. at 9-18.) The Federal Respondents further argue that under *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Government can continue to hold Petitioner without a bond hearing "until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." (Resp. to Pet. at 18 (quoting *Zadvydas*, 533 U.S. at 701).) Thus, the Federal Respondents contend that because the BIA may reverse the IJ's grant of relief from removal, "there is a significant likelihood of [Petitioner's] removal in the reasonably foreseeable future." (Resp. to Pet. at 18.)

### III. ANALYSIS

"A writ of habeas corpus enables a person detained by the government to challenge the legality of his confinement and, if successful, obtain his release." *Abdulkadir A. v. Sessions*, No. 18-cv-2353 (NEB/HB), 2018 WL 7048363, at *2 (D. Minn. Nov. 13, 2018) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 485 (1973)), *accepting report and recommendation*, 2019 WL 201761 (D. Minn. Jan. 15, 2019). Federal courts have jurisdiction to hear habeas challenges to the lawfulness of immigration-related detentions

---

[4] The Court notes the Response states that it is in response to the initial Petition, as opposed to the Amended Petition. (Resp. to Pet. at 1.) The Petition and Amended Petition, however, are largely identical. Federal Respondents filed their response after Petitioner filed his Amended Petition, and the Federal Respondents respond to the arguments raised in the Amended Petition.

7

under 28 U.S.C. § 2241.  *Zadvydas*, 533 U.S. at 687; *Denmore v. Kim*, 538 U.S. 510, 516-17 (2003).

### A. Fifth Amendment Due Process

The Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Fifth Amendment's Due Process] Clause protects."  *Zadvydas*, 533 U.S. at 690; *accord El-Dessouki v. Cangemi*, No. 06-cv-3536 (DSD/JSM), 2006 WL 2727191, at *3 (D. Minn. Sept. 22, 2006) ("[A]n alien's freedom from imprisonment lies at the heart of the liberty that the substantive due process clause protects.") (quotation omitted).  "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings."  *Reno v. Flores*, 507 U.S. 292, 306 (1993); *accord Denmore*, 538 U.S. at 523.

### B. Statutory Bases for Detention

Here, there are arguably two statutory bases for the detention of an alien seeking withholding-only relief while under a reinstated removal order: 8 U.S.C. § 1226 (pre-removal) and § 1231 (post-removal).

#### 1. Section 1226

"Section 1226 provides for detention of aliens pending a decision on whether or not an alien is to be removed from the United States."  *Amreya R.S. v. Barr*, No. 19-cv-3042 (NEB/LIB), 2020 WL 2770942, at *3 (D. Minn. May 6, 2020), *report and recommendation adopted,* 2020 WL 2769278 (D. Minn. May 28, 2020), *appeal dismissed*, No. 20-2502 (8th

Cir. Sept. 30, 2020). Section 1226 "supplies a general rule giving the Government discretion to detain any aliens pending a removal determination" and "[t]he statute itself places no limit on the length of time an alien may be detained during the pendency of removal proceedings." *Gilo O.G. v. Barr*, No. 19-cv-1339 (PJS/DTS), 2019 WL 5057544, at *3 (D. Minn. Aug. 28, 2019) (citing *Jennings v. Rodriguez*, 138 S. Ct. 830, 846-47 (2018)). In relevant part, § 1226(a) provides:

> On a warrant issued by the Attorney General, an alien may be arrested and detained *pending a decision on whether the alien is to be removed from the United States*. Except as provided in subsection (c) and pending such decision, the Attorney General—
>
> (1) may continue to detain the arrested alien; and (2) may release the alien on—
>
> (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
>
> (B) conditional parole[.]

8 U.S.C. § 1226(a) (emphasis added).

Further, an alien detained under § 1226(a) "may seek review of his detention by an officer at the Department of Homeland Security and then by an immigration judge." *Nielsen v. Preap*, 139 S. Ct. 954, 959-60 (2019) (citing 8 C.F.R. §§ 236.1(c)(8) and (d)(1), 1003.19, 1236.1(d)(1)). At these hearings, the alien "may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." *Preap*, 139 S. Ct. at 960 (citing 8 C.F.R. §§ 1003.19(a), 1236.1(d)).

### 2. Section 1231

On the other hand, "[o]nce an 'alien is ordered removed,'" § 1231 controls." *Gilo O.G.*, 2019 WL 5057544, at *3 (quoting 8 U.S.C. § 1231(a)(1)(A)). Significantly, an alien who has been previously removed and later reenters the United States without authorization is subject to his or her prior removal order, which is reinstated from its original date. 8 U.S.C. § 1231(a)(5).

Section 1231 requires that an alien be removed "from the United States within a period of 90 days," known "as the 'removal period.'" 8 U.S.C § 1231(a)(1)(A). Section 1231 makes detention mandatory during the 90-day removal period. *Id.* § 1231(a)(2) ("During the removal period, the Attorney General *shall* detain the alien.") (emphasis added). This 90-day period for removal "begins on the latest of three dates: the date the removal order becomes 'administratively final'; the date of a reviewing court's final order, if that court has issued a stay of removal; or the date on which a noncitizen subject to removal is released from non-immigration detention." *Guzman Chavez*, 940 F.3d at 874 (citing 8 U.S.C. § 1231(a)(1)(B)(i)-(iii)).

"'If the alien does not leave or is not removed within the removal period,' then he is normally subject to supervised release." *Guerrero-Sanchez*, 905 F.3d at 214 (quoting 8 U.S.C. § 1231(a)(3)). Certain classes of aliens, however, including those like Petitioner who are inadmissible under 8 U.S.C. § 1182, "may be detained beyond the removal period" pursuant to paragraph (6) of § 1231(a). 8 U.S.C. § 1231(a)(6); *see also Guerrero-Sanchez*, 940 F.3d at 214. Under § 1231(a)(6), "an alien may be held in confinement until it has

been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.

### 3. Withholding-Only Proceedings: Section 1226 or 1231?

"The authorization for an alien's detention shifts from § 1226(a) to § 1231(a)—that is, from the pre-removal phase to the post-removal phase—at the point that the alien's order of removal becomes administratively final and removal is therefore certain." *Guerrero-Sanchez*, 905 F.3d at 215 (citing 8 U.S.C. § 1231(a)(1)(B)). There are, however, different interpretations as to whether an alien in withholding-only proceedings is subject to an administratively final removal order. "The statutory scheme governing [Petitioner's] detention . . . is not a model of clarity." *Prieto-Romero v. Clark*, 534 F.3d 1053, 1058 (9th Cir. 2008) (analyzing §§ 1226 and 1231). Differing interpretations of the INA's language as it relates to aliens in withholding-only proceedings while detained under a reinstated removal order have created a circuit split. As the Sixth Circuit recently summarized:

> The Second and Fourth Circuits argue that § 1226 governs detention before the government has the authority to remove the alien from the country, while § 1231 governs once the government obtains that authority. Basically, their theory of the case is one of actual removability—*i.e.*, an alien in withholding-only proceedings is detained under § 1226(a) until there are no longer any legal impediments to removal. The Third and Ninth Circuits assert that aliens in [Petitioner's] circumstances are detained under § 1231(a) because an alien in withholding-only proceedings has already been adjudged to be removable—the only issue to be resolved in the withholding-only proceedings is the location to where the government can remove the alien.

*Martinez*, 968 F.3d at 560 (internal citations omitted). Although reaching a different conclusion on the bond issue, the Sixth Circuit agreed with the Third and Ninth Circuits

11

that a plain reading of the statute places aliens in withholding-only proceedings in § 1231(a), the post-removal statute. *Id.* at 564.

Perhaps best summarized by a district court in the District of New Hampshire, the dispute as to where aliens in withholding-only proceedings fall in this statutory scheme "is complex and continues to evolve across the country." *Rivera-Medrano v. Wolf*, No. 20-cv-194-JD, 2020 WL 1695628, at *3 (D.N.H. Apr. 6, 2020) (collecting cases).

### C. If § 1231(a) Governs, Petitioner is Entitled to a Bond Hearing

The majority of the circuit courts to consider whether § 1226(a) or § 1231(a) governs the detention of aliens in withholding-only proceedings following a reinstated removal order have concluded that § 1231(a) applies. *Martinez*, 968 F.3d at 559-64; *Guerrero-Sanchez*, 905 F.3d at 215-19; *Padilla-Ramirez*, 882 F.3d at 831-33. Federal Respondents likewise argue that Petitioner's detention is governed by § 1231(a). (Resp. to Pet. at 1, 17-18.) This Court need not, however, enter this thicket as even assuming for sake of argument that Petitioner's detention is governed by § 1231(a), Petitioner is entitled to a bond hearing. *See Rivera-Medrano*, 2020 WL 1695628, at *3 (declining to decide whether § 1226(a) or § 1231(a) applies to aliens in withholding-only proceedings as "[e]ven if § 1231(a) applies, as the respondents urge, [Petitioner] would be entitled to a bond hearing under the Due Process Clause of the Fifth Amendment"); *see also Guerrero-Sanchez*, 905 F.3d at 219-26; *Diouf v. Napolitano*, 634 F.3d 1081, 1084 (9th Cir. 2011).

Like *Rivera-Medrano*, the Court finds the Third Circuit's analysis in *Guerrero-Sanchez* persuasive. *See* 2020 WL 1695628, at *4 (examining *Guerrero-Sanchez*). In *Guerrero-Sanchez*, the Third Circuit first held that "a reinstated removal order is

12

administratively final for the purposes of removal" and thus § 1231(a) governed the detention of an alien in withholding-only proceedings while subject to a reinstated order of removal. 905 F.3d at 219; *cf. Nasrallah v. Barr*, 140 S. Ct. 1683, 1691 (2020) ("[A] CAT order does not disturb the final order of removal.") The Third Circuit then turned its attention to whether § 1231(a)(6) implicitly required a bond hearing. *Id.* at 219-26. It began by distinguishing *Zadvydas*, a case which addressed "the detention of noncitizens who . . . have exhausted all administrative and judicial challenges from removal," from the "due process concerns posed by the prolonged detention of [aliens] still seeking withholding-only relief." *Id.* at 220. In doing so, the appellate court distinguished between those aliens who had exhausted all remedies but had still not been removed from those aliens "pursuing a bona fide withholding-only claim that could take years to resolve." *Id.* The Third Circuit observed that this distinction was material because "detaining [an alien] without a bond hearing while he pursues his bona fide withholding-only claim would effectively punish him for pursuing applicable legal remedies." *Id.* (quotation and footnote omitted).

Given that "a detention could still raise constitutional concerns even if it is ostensibly authorized by statute," the Third Circuit reasoned that due process may prohibit prolonged detention under § 1231(a)(6) without a bond hearing and consequently applied the cannon of constitutional avoidance. *Id.* at 221-24. The Third Circuit ultimately held that "an alien facing *prolonged detention* under [that provision] is entitled to a bond hearing before an immigration judge and is entitled to be released from detention unless the government establishes that the alien poses a risk of flight or a danger to the community."

13

*Id.* at 224 (quoting *Diouf*, 634 F.3d at 1092 (emphasis added)).[5] At these bond hearings "[t]he Government must meet its burden . . . by clear and convincing evidence." *Id.* at 224 n.12 (citing *Singh v. Holder*, 638 F.3d 1196, 1203-04 (9th Cir. 2011)). The Third Circuit further held that "an alien detained under § 1231(a)(6) is generally entitled to a bond hearing after six months (*i.e.*, 180 days) of custody." *Id.* at 226.

The Sixth Circuit, while agreeing with *Guerrero-Sanchez* in many respects, declined to extend a bond-hearing requirement onto § 1231(a)(6), citing the Supreme Court's decision in *Jennings*. *Martinez*, 968 F.3d at 565-66. *Jennings* rejected the use of statutory interpretation to graft a reasonableness limitation onto 8 U.S.C. § 1226(c), a pre-removal provision requiring the detention of certain criminal aliens. 138 S. Ct. at 842, 846-47; *see Muse v. Sessions*, 409 F. Supp. 3d 707, 713 (D. Minn. 2018). In *Jennings*, the Supreme Court observed that although "§ 1226(c) does not on its face limit the length of the detention it authorizes," it "is *not* 'silent' as to the length of detention." 138 S. Ct. at 846. Section 1226(c) "mandates detention pending a decision on whether the alien is to be removed from the United States, and it expressly prohibits release from that detention except for narrow, witness-protection purposes." *Id.* (quotation and citation omitted); *see Ali v. Brott*, 770 F. App'x 298, 301 (8th Cir. 2019). Because "§ 1226(c) makes clear that detention of aliens within its scope *must* continue pending a decision on whether the alien

---

[5] The Third Circuit applied the multi-factor test provided by *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), to determine when prolonged detention occurs. *Guerrero-Sanchez*, 905 F.3d at 225. These factors are: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mathews*, 424 U.S. at 335. In considering these factors and adopting the six-month rule, the Third Circuit court noted *Zadvydas*'s presumption that detention up to six months does not violate due process. *Guerrero-Sanchez*, 905 F.3d at 226 (citing *Zadvydas*, 533 U.S. at 678, 701).

14

is to be removed from the United States," statutory interpretation could not be used to alter its terms. *Jennings*, 138 S. Ct. at 846-47 (quotation omitted); *see Ali*, 770 F. App'x at 301; *Muse*, 409 F. Supp. 3d at 713.

The continued development of caselaw on this issue establishes that the interpretation of § 1231(a)(6) as it relates to bond hearings for those in withholding-only proceedings remains unsettled. At this juncture, however, the Court finds that there is enough distinction between § 1226(c) and § 1231(a)(6) to survive *Jennings*. As reasoned by the Third Circuit in *Guerrero-Sanchez*'s constitutional avoidance discussion, "§ 1231(a)(6), unlike other provisions in the INA, does not provide for detention for a specified period of time, uses the word 'may' to describe the detention authority rather than 'shall,' and lacks an express exception to detention provided for in the provision." 905 F.3d at 223 (citing *Jennings*, 138 S. Ct. at 844); *see also id.* ("The Supreme Court has already determined that the text of § 1231(a)(6) is ambiguous as to the due process protections that it provides.") (citing *Zadvydas*, 533 U.S. at 697). Further, courts since *Jennings* have utilized the analytical framework articulated in *Guerrero-Sanchez*. *See, e.g., Aleman Gonzalez v. Barr*, 955 F.3d 762 (9th Cir. 2020) (holding that *Diouf* and *Singh* remain good law post-*Jennings*).

Petitioner is in a similar position as the petitioner in *Guerrero-Sanchez*, i.e., an alien pursing withholding-only relief while detained under a reinstated order of removal. *See* 905 F.3d at 210-11; *see also Rivera-Medrano*, 2020 WL 1695628, at *3. If Petitioner is detained under § 1231(a), as Federal Respondents assert, at this point he is detained under § 1231(a)(6), which "allows for the government to detain aliens past the 90-day removal

period if they are removable and considered 'unlikely to comply with the order of removal.'" *Martinez*, 968 F.3d at 560 (citing 8 U.S.C. § 1231(a)(6)). This is supported by DHS's 180-day custody review, which determined Petitioner would not be released under the federal regulations governing continued detention of aliens beyond the removal period. (*See* Decision to Continue Detention at 1, ECF No. 4-7.)

Petitioner has now been detained for over 14 months. Even if 6 of those 14 months are presumably reasonable and § 1231(a)(6) permits the continued detention of inadmissible aliens like Petitioner beyond the removal period while they seek withholding-only relief under reinstated removal orders, Petitioner's detention has become prolonged. *Guerrero-Sanchez*, 905 F.3d at 226 & n. 15; *see Diouf*, 634 F.3d at 1091-92 & n.13; *see also Zadvydas*, 533 U.S. at 701. Under *Guerrero-Sanchez*, Petitioner is entitled to a bond hearing before an IJ where DHS bears the burden of proving by clear and convincing evidence that, notwithstanding Petitioner's prolonged detention, he should continue to be held without bond. Therefore, the Court recommends that Petitioner receive an individualized bond hearing before an IJ.

### D. EAJA

Finally, Petitioner requests that he be awarded reasonable attorney fees and costs pursuant to the EAJA and 5 U.S.C. § 504 "if applicable." (Am. Pet. at p. 58.) Under the EAJA,

> a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or

16

> against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).  This includes "habeas petitions challenging immigration detention."  *Estrada-Heredia v. Holder*, No. 12-cv-1157 (SRN/SER), 2012 WL 4839113, at *2 (D. Minn. Sept. 25, 2012), *report and recommendation adopted*, 2012 WL 4839019 (D. Minn. Oct. 11, 2012).

Though this Court is granting Petitioner's Amended Petition in part, the Court declines to make a recommendation as to whether Petitioner is entitled to fees and costs under the EAJA.  The EAJA requires the party seeking attorney fees and costs to submit an application and supporting documentation "*within thirty days of final judgment in the action*."  28 U.S.C. § 2412(d)(1)(B) (emphasis added).  Petitioner's request for such fees and costs "is neither ripe nor properly submitted."  *Abdulkadir A.*, 2018 WL 7048363, at *13; *see also Abshir H. A. v. Barr*, No. 19-cv-1033 (PAM/TNL), 2019 WL 3719467, at *10 (D. Minn. June 28, 2019), *report and recommendation adopted*, 2019 WL 3719414 (D. Minn. Aug. 7, 2019).  The Court also declines to make a recommendation as to whether Petitioner is entitled to fees and costs under 5 U.S.C. § 504, as there is reason to believe this statute does not apply in these proceedings and, notwithstanding, any such request is likewise premature.  *See Abshir H. A.*, 2019 WL 3719467, at *10 n.9.

[continued on next page]

## IV. RECOMMENDATION

Based upon the record, memoranda, and the proceedings herein, and for the reasons stated above, **IT IS HEREBY RECOMMENDED** that:

1. Petitioner's Amended Petition for Writ of Habeas Corpus (ECF No. 4) be **GRANTED IN PART** and **DENIED IN PART** as set forth herein.

2. If this Report & Recommendation is adopted, an Immigration Judge shall provide Petitioner with an individualized bond hearing within 30 days of such order. At the bond hearing, the Department of Homeland Security shall bear the burden of proving by clear and convincing evidence that Petitioner's detention is necessary to protect the community and/or to prevent Petitioner from fleeing.

Dated: November __23__, 2020         *s/Tony N. Leung*
                                      Tony N. Leung
                                      United States Magistrate Judge
                                      District of Minnesota

                                      *Marco A. C.-P. v. Barr, et al.*
                                      Case No. 20-cv-1698 (JRT/TNL)

### NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).