UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| MARCO A. C.-P., | Civil No. 20-1698 (JRT/TNL) |
| Petitioner, | |
| v. | **MEMORANDUM OPINION AND ORDER ADOPTING MODIFIED REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE** |
| MERRICK GARLAND, *U.S. Attorney General*; ALEJANDRO MAYORKAS, *Secretary, Department of Homeland Security*; TAE D. JOHNSON, *Acting Director, Immigration and Customs Enforcement*; PETER BERG, *Director, St. Paul Field Office, Immigration and Customs Enforcement*; and JOEL BROTT, *Sheriff, Sherburne County*, | |
| Respondents. | |

---

Bruce D. Nestor, **DE LEON & NESTOR, LLC**, 3547 Cedar Avenue South; Paul Abraham Dimick and Teresa J. Nelson, **AMERICAN CIVIL LIBERTIES UNION OF MINNESOTA**, P.O. Box 14720, Minneapolis, MN 55414, for petitioner;

Ana H. Voss, Ann M. Bildtsen, and Chad A. Blumenfield, **UNITED STATES ATTORNEY'S OFFICE**, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for respondent.

Petitioner Marco A. C.-P. filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, requesting a bond hearing related to his detention during withholding-only immigration proceedings. Magistrate Judge Tony Leung issued a Report & Recommendation ("R&R"), recommending that the Court find that Petitioner is entitled

to an individualized bond hearing. The United States objected to the R&R, arguing that Petitioner is not entitled to a bond hearing because there is a significant likelihood of his removal in the reasonably foreseeable future.

Because the Court finds that Petitioner has been subjected to prolonged detention and has provided reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, which the United States has not sufficiently rebutted, the Court will order that Petitioner receive an individualized bond hearing before an Immigration Judge. The Court also finds that due process considerations require that the United States bear the burden at the bond hearing of demonstrating by clear and convincing evidence that continued detention is warranted. The Court will therefore overrule the United States' objections, adopt the R&R, and grant the petition in part.

## BACKGROUND

### I. FACTUAL BACKGROUND

In 2004, Petitioner, a native and citizen of Mexico, entered the United States for the first time. (Am. Petition for Writ of Habeas Corpus ("Petition") ¶ 42, Aug. 6, 2020, Docket No 4; Petition, Ex. A ("IJ Order") at 5, Aug. 6, 2020, Docket No. 4-2.) He was about twelve years old. (Petition ¶ 42.) In the last sixteen years, Petitioner has left the country just once; in August of 2010 he returned to Mexico briefly to attend his grandfather's funeral. (*Id*. ¶ 43.) On August 14, 2010, as Petitioner attempted to reenter the United States, he was apprehended by authorities. (*Id.*) Petitioner was ordered removed, and

his removal to Mexico was completed on August 15, 2010. (*Id.*) A few days later, Petitioner reentered the United States. (*Id.* ¶ 44.)

Petitioner now resides in Minnesota, where he has maintained employment in the construction and farming industries. (*Id.* ¶¶ 44–46.) Petitioner's mother and sisters also reside in Minnesota and are United States citizens. (Petition ¶ 44.) Petitioner's wife and two daughters, all of whom are United States citizens, reside in Kansas. (*Id.* ¶ 45; IJ Order at 4.)

In September 2019, Petitioner was arrested for fifth degree possession of a controlled substance. (*Id.* ¶ 53; Petition, Ex. C at 1, Aug. 6, 2020, Docket No. 4-4.) On September 12, 2019, a state court judge granted Petitioner's release on bond, and he was then taken into custody by Immigration and Customs Enforcement ("ICE"). (*Id.* ¶ 54.) On September 13, 2019, authorities from the Department of Homeland Security ("DHS") informed Petitioner that the agency intended to reinstate the August 14, 2010 order for his removal. (*Id.* ¶ 55; IJ Order at 2.)

Petitioner was referred to an asylum officer to assess whether he had reasonable fear of returning to Mexico. (Petition ¶ 55.) On October 2, 2019, the asylum officer determined that Petitioner had failed to establish a reasonable possibility of persecution or torture in Mexico; Petitioner requested the case be referred to an Immigration Judge ("IJ") for review of that determination. (*Id.* ¶ 56.)

## II. IMMIGRATION COURT PROCEEDINGS

On March 6, 2020, following a hearing on the merits, the IJ vacated the asylum officer's determination. (*See* IJ Order at 16, 21.) The IJ found that Petitioner had credibly demonstrated past persecution by people who had perceived Petitioner to be homosexual and others who had made threats on his life and actually harmed members of his family. (*Id.* at 4–7.) The IJ concluded that Petitioner was accordingly entitled to a presumption that his life or freedom would be threatened in the future if he were removed to Mexico. (*Id.* at 11–12.)

The IJ then found that DHS had not demonstrated by a preponderance of the evidence that a fundamental change in circumstances rebutted the presumption of future threats to Petitioner, determining that numerous specific threats to Petitioner's life or freedom were likely to arise if he were removed to Mexico. (*Id.* at 12–16.) Accordingly, the IJ granted Petitioner's application for withholding of removal under § 241(b)(3) of the Immigration and Naturalization Act ("INA"), which prohibits the United States from removing a non-citizen to a country where that person's life or freedom would be threated because of their race, religion, nationality, membership in a particular social group, or political opinion. (*Id.* at 21; 8 U.S.C. § 1231(b)(3).) The IJ also found that Petitioner suffered past harm amounting to torture and would more likely than not face torture again if removed to Mexico, and that Petitioner had demonstrated that the Mexican authorities were unable or unwilling to control those who threatened him. (IJ

Order at 16–21.) The IJ therefore granted Petitioner's application for withholding of removal under Article 3 of the Convention Against Torture ("CAT"). (*Id.* at 21.)

The United States' timely appeal of the IJ decision to the Board of Immigration Appeals ("BIA") is pending. (Decl. Eric J. O'Denius ¶ 11, Aug. 27, 2020, Docket No. 7.) On March 27, 2020, ICE conducted a custody review and ordered that Petitioner remain in detention because Petitioner posed a significant flight risk pending removal. (*Id.* ¶ 12; Petition, Ex. F. at 1, Aug. 6, 2020, Docket No. 4-7.)

## II. STATUTORY & LEGAL BACKGROUND

Pursuant to the IJ Order, Petitioner is currently detained during what are known as "withholding-only" removal proceedings: his 2010 removal order has been reinstated, but he cannot be removed to the country designated on his removal order because an IJ has found that he qualifies for withholding of removal. To qualify for withholding of removal under the INA, an applicant must show a "clear probability that his life or freedom would be threatened in [the potential country of removal] because of [his] race, religion, nationality, membership in a particular social group, or political opinion." *Mendez-Gomez v. Barr*, 928 F.3d 728, 733 (8th Cir. 2019) (quoting 8 U.S.C. § 1231(b)(3)(A)) (citation omitted) (alteration in original). Withholding is also available under CAT if the applicant demonstrates that "it is more likely than not that [he] would be tortured if removed to the proposed country of removal" and, if the alleged torturers are private actors, that the

governmental authorities in the designated country of removal are "unable or unwilling to control those actors." *Id.* (quotation omitted).

In January 2021, the Supreme Court heard arguments in *Pham v. Guzman Chavez*, which raises the issue of whether noncitizens in withholding-only proceedings are detained pursuant to 8 U.S.C. § 1226, which governs immigration detention prior to the issuance of a final order of removal and includes a bond hearing provision, or 8 U.S.C. § 1231, which governs detention during the removal period after a final order issues and does not explicitly provide for a bond hearing. *Pham v. Guzman Chavez*, U.S. Docket No. 19-891 (argued Jan. 11, 2021). The petitioners in *Guzman Chavez* are, as here, subject to reinstated removal orders, but are awaiting final determinations on proceedings for withholding of removal based upon a reasonable fear of persecution or torture in the countries designated in their removal orders. *See Guzman Chavez v. Hott*, 940 F.3d 867, 869 (4th Cir. 2019), *cert. granted sub nom. Albence v. Guzman Chavez*, 141 S. Ct. 107 (2020).

In its decision, the Fourth Circuit held that § 1226 governs withholding-only detention, finding that § 1226 authorizes detention "pending a decision on whether the alien *is to be removed*, 8 U.S.C. § 1226(a) (emphasis added), invoking the practical question of whether the government has the authority to execute a removal." *Guzman Chavez*, 940 F.3d at 876. The court found that § 1231, on the other hand, applies only when a petitioner is both removable legally *and* practically, and is triggered "not when an

alien is ordered removed . . . but only when the removal period begins[,]" which does not occur "until the government has the actual legal authority to remove a noncitizen from the country." *Id.* (quotations omitted). Because the government lacks the legal authority to remove detainees whose petitions for withholding of removal are pending or granted, the court reasoned that their detention is governed by § 1226, not § 1231. *Id.* at 878, 882.

The Fourth Circuit decision deepened a circuit split that the Supreme Court's pending decision is expected to resolve. The Second Circuit has also held that § 1226 governs withholding-only proceedings. *See Guerra v. Shanahan*, 831 F.3d 59, 64 (2d Cir. 2016) ("[T]he language and structure of the statutes dictate the conclusion that [Petitioner's] detention during the pendency of his withholding-only proceedings is detention pursuant to 8 U.S.C. § 1226(a).") However, the Third, Sixth, and Ninth Circuits have held that § 1231 governs because the reinstated removal order is a final administrative order, and the only remaining issue is where the detainee may be removed. *See Padilla-Ramirez v. Bible*, 882 F.3d 826, 832 (9th Cir. 2017) ("This narrow question of *to where* an alien may be removed is distinct from the broader question of *whether* the alien may be removed; indeed, the former inquiry requires that the latter already have been resolved in the affirmative."); *Guerrero-Sanchez v. Warden York Cnty. Prison*, 905 F.3d 208, 216 (3d Cir. 2018) ("Because [petitioner's] CAT claim casts no doubt on his removal from the United States, it does not implicate § 1226(a)."); *Martinez v.*

*Larose*, 968 F.3d 555, 561–62 (6th Cir. 2020) (holding that § 1231(a) provided statutory authority for detention).

III. **PROCEDURAL BACKGROUND**

In August 2020, Petitioner filed a petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Petition ¶ 14.) At the time, Petitioner had been detained for nearly a year while in withholding-only removal proceedings, and had not been granted a bond hearing. (*Id*. ¶ 2.) Petitioner argues that his detention is governed by § 1226, which entitles detainees without criminal histories to an individualized bond hearing and to seek discretionary release. (*Id*. ¶¶ 67–89.) In the alternative, Petitioner argues that, if his detention falls under § 1231 he is still statutorily entitled to a bond hearing because he has been detained longer than six-months, (*id*. ¶¶ 90–120), and because his prolonged detention violates his fundamental rights to due process, (*id*. ¶¶ 121–34).

In response to the petition, the Magistrate Judge issued an R&R, concluding that the Court need not determine whether Petitioner is detained pursuant to § 1226 or § 1231, because the length of his detention necessitates that he receive a bond hearing regardless of the statutory basis for his detention. (R&R at 12, Nov. 23, 2020, Docket No. 12.) The Magistrate Judge also concluded that Petitioner's request for fees and costs under the EAJA was neither ripe nor properly submitted and recommended denying this request. (*Id*. at 17.) Accordingly, the Magistrate Judge recommended that the Court grant in part and deny in part the petition. (*Id*. at 18.)

The United States has objected to the R&R, arguing that the Magistrate Judge erroneously concluded that Petitioner is entitled to a bond hearing and asking the Court to clarify which party bears the burden of persuasion, should the Court find that a bond hearing is required. (Obj. R&R, Dec. 7, 2020, Docket No. 14.)

**DISCUSSION**

I. **STANDARD OF REVIEW**

After a magistrate judge files an R&R, a party may file "specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2); *accord* D. Minn. LR 72.2(b)(1). "The objections should specify the portions of the magistrate judge's report and recommendation to which objections are made and provide a basis for those objections." *Mayer v. Walvatne*, No. 07–1958, 2008 WL 4527774, at *2 (D. Minn. Sept. 28, 2008). For dispositive motions, the Court reviews de novo a "properly objected to" portion of an R&R. Fed. R. Civ. P. 72(b)(3); *accord* D. Minn. LR 72.2(b)(3). "Objections which are not specific but merely repeat arguments presented to and considered by a magistrate judge are not entitled to *de novo* review, but rather are reviewed for clear error." *Montgomery v. Compass Airlines, LLC*, 98 F. Supp. 3d 1012, 1017 (D. Minn. 2015).

II. **ANALYSIS**

A. **Right to a Bond Hearing**

The question presented by the United States is whether the Magistrate Judge erroneously concluded that Petitioner is entitled to a bond hearing based on the

prolonged nature of his detention.  The United States argues that the Court should follow the Sixth Circuit in *Martinez v. Larose*, 968 F.3d 555, 565–566 (6th Cir. 2020) and reject an implicit bond hearing requirement in § 1231(a) because there is a significant likelihood that Petitioner will be removed in the reasonably foreseeable future, rather than relying on the Third Circuit's reasoning in *Guerrero-Sanchez v. Warden York Co. Prison*, 905 F.3d 208, 219 (3d Cir. 2018).

Both the Third Circuit and Sixth Circuit have found that detention during withholding-only proceedings is governed by § 1231(a), which, as discussed above, means that the text of the statute does not explicitly provide for a bond hearing.  However, the Third Circuit found that § 1231(a) nonetheless features an implicit bond hearing requirement by relying on the Supreme Court's rationale in *Zadvydas v. Davis*, 533 U.S. 678 (2001), which recognized that detention pursuant to § 1231 in excess of six months raises significant constitutional issues.  *See Guerrero-Sanchez*, 905 F.3d 208, 221, 226 (3d Cir. 2018); *see also Diouf v. Napolitano*, 634 F.3d 1081, 1086, 1091–92 (9th Cir. 2011) (finding no basis for withholding the procedural safeguards established in § 1226 from individuals subject to prolonged immigration detention under § 1231 and defining prolonged detention as six months).

The Sixth Circuit in *Martinez* likewise relied on *Zadvydas*, but denied the petitioner's request for a bond hearing.  In *Zadvydas*, the Supreme Court explained that the six-month presumption does not dictate release of every person detained for longer

than six months; rather the inquiry hinges on whether there is a significant likelihood of removal in the reasonably foreseeable future. The Sixth Circuit concluded that, although the petitioner had been in custody for roughly two years, his removal was reasonably foreseeable if he did not prevail on his pending actions in federal court and before the BIA. 968 F.3d at 565. Thus, the Sixth Circuit declined to find that § 1231(a) included a bond hearing requirement under the circumstances, but noted that the petitioner could refile his § 2241 petition if he prevailed on his other pending actions, when removal would no longer be foreseeable. *Id.* at 565–66.

Here, the United States argues that there is a significant likelihood of removal in the reasonably foreseeable future because the BIA could reverse the IJ's grant of relief, and therefore Petitioner is not entitled to a bond hearing under *Zadvydas*. However, the *Zadvydas* Court recognized that reasonableness was defined by whether the detention "exceeds a period reasonably necessary to secure removal" and "as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Zadvydas*, 533 U.S. at 699, 701. Petitioner has now been detained for more than 590 days without any resolution of the United States' appeal to the BIA or any clarity as to the timing of his possible removal. Thus, the scope of the "reasonably foreseeable future" has now shrunk considerably, and indefinite detention pending an uncertain BIA determination that will be issued at an unknown future time

raises the very due process issues that concerned the Supreme Court in *Zadvydas*. 533 U.S. at 690–92, 699.[1]

Further, weighing Petitioner's liberty interest against DHS's interest in keeping him in custody without a bond hearing, the Court is persuaded by the Ninth Circuit's reasoning in *Diouf* that when detention lasts longer than six months and release or removal are not imminent, "the risk of an erroneous deprivation of liberty in the absence of a hearing before a neutral decisionmaker is substantial [and the] burden imposed on the government by requiring hearings before an immigration judge at this stage of the proceedings is therefore a reasonable one." 634 F.3d at 1092.

In sum, based upon the facts alleged in the petition and the duration of Petitioner's custody, the Court finds that Petitioner has provided good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future. The United States has not sufficiently rebutted that showing. The Court finds that Petitioner is entitled to an individualized bond hearing, consistent with *Zadvydas*. 533 U.S. at 701.

---

[1] On January 20, 2021, the Acting Secretary of Homeland Security issued a Memorandum directing DHS to pause removals for 100-days for any noncitizen present in the United States, with the exception of those who ICE has found to be a national security threat, were not present in the United States before November 1, 2020, have voluntarily agreed to waive any rights to remain in the United States, or for whom the Acting Director of ICE has made an individualized determination that removal is required by law. Memorandum from the U.S. Dep't of Homeland Security, *Review of and Interim Revision to Civil Immigration Enforcement and Removal Policies and Priorities* (Jan. 20, 2021) Although a district court in Texas has enjoined DHS from enforcing and implementing the 100-day pause nationwide, *see Texas v. United States*, 2021 WL 723856 (S.D. Tex. Feb. 23, 2021), this policy and related litigation creates additional uncertainty as to the timeline for resolution of Petitioner's immigration proceedings here.

The Court will therefore overrule the United States' objection and adopt the R&R finding that Petitioner has a right to a bond hearing.

**B. Burden of Proof at Bond Hearing**

The United States also objects to the Magistrate Judge's recommendation that the United States should carry the burden to demonstrate by clear and convincing evidence that Petitioner's continued detention is necessary to protect the community or to prevent him from fleeing. There is presently no binding authority in the Eighth Circuit or from the Supreme Court mandating a particular burden or standard of proof for the type of immigration bond hearing addressed here. As such, courts in this district have generally concluded that the IJ should have the opportunity to decide this issue in the first instance. *See, e.g.*, *Bolus A.D. v. Sec'y of Homeland Sec.*, 376 F. Supp. 3d. 959, 963 (D. Minn. 2019); *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 904–05 (D. Minn. 2020). However, the Court finds that due process considerations weigh heavily on the question of burden and quantum of proof related to prolonged immigration detention, and the federal courts are best equipped to resolve questions of this nature. *See Santosky v. Kramer*, 455 U.S. 745, 755–56 (1982).

Regardless of the type of proceeding, "the minimum standard of proof tolerated by the due process requirement reflects not only the weight of the private and public interests affected, but also a societal judgment about how the risk of error should be distributed between the litigants." *Id.* at 755. The United States undoubtedly has an

interest in ensuring community safety and that those in immigration proceedings do not flee. *Zadvydas*, 533 U.S. at 690. However, immigration detainees have a strong interest in liberty, *id.* at 693–94, and "[f]reedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992).

When the United States seeks to deprive a person of their liberty, it is generally held to a higher quantum of proof, and the Supreme Court has established that the intermediate "clear and convincing" standard is appropriate when the individual interests at stake are both "particularly important" and "more substantial than mere loss of money[.]" *Addington v. Texas*, 441 U.S. 418, 424 (1983); s*ee also United States v. Salerno*, 481 U.S. 739, 750–52 (1987) (pre-trial detention); *Woodby v. Immigration and Naturalization Service*, 385 U.S. 276, 286 (1966) (deportation); *Schneiderman v. United States*, 320 U.S. 118, 123 (1943) (denaturalization).

Although Petitioner has already been found to be removable and his liberty interest may therefore be slightly less than that of a person at the initial finding of removal stage, the same interest in freedom from prolonged detention is at stake. *Singh v. Holder*, 638 F.3d 1196, 1205 (9th Cir. 2011); *see also Zadvydas*, 533 U.S. at 696 (recognizing the constitutional interest arising from indefinite immigration detention). Further, the possible injury to Petitioner—unnecessary deprivation of his liberty—is so substantial that "it is improper to ask the individual to share equally with society the risk of error . . .

[and] a clear and convincing standard of proof provides the appropriate level of procedural protection." *Singh*, 638 F.3d at 1203–04 (citing *Addington*, 441 U.S. at 427).

Accordingly, the Court joins other jurisdictions in concluding that it is appropriate for the United States to bear the burden of proving by clear and convincing evidence that Petitioner's continued detention is necessary to protect the community or prevent his flight. *See, e.g.*, *id.*[2] The Court will therefore overrule the United States' objections and adopt the R&R.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Respondents' Objections to the R&R [Docket No. 14] are **OVERRULED**;

2. The R&R [Docket No. 12] is **ADOPTED**;

3. The Amended Petition for Writ of Habeas Corpus [Docket No. 4] is **GRANTED** in part and **DENIED** in part, as follows:

---

[2] *See also Velasco Lopez v. Decker*, 978 F.3d 842, 857 (2nd Cir. 2020) ("[R]equiring the Government to prove that [Petitioner] is a danger to the community or a flight risk by clear and convincing evidence to justify his continued detention strikes a fair balance between the rights of the individual and the legitimate concerns of the state." (quotation omitted)); *German Santos v. Warden Pike Cnty. Correctional Facility*, 965 F.3d 203, 213 (3rd Cir. 2020) ("[O]nce detention under § 1226(c) has become unreasonable, the Government must put forth clear and convincing evidence that continued detention is necessary."); *Darko v. Sessions*, 342 F. Supp. 3d 429, 436 (S.D.N.Y. 2018) (requiring clear and convincing evidence to justify detention at § 1226(a) bond hearing); *Brito v. Barr*, 415 F. Supp. 3d 258, 267 (D. Mass. 2019) (same); *Rajesh v. Barr*, 420 F. Supp. 3d 78, 88 (W.D.N.Y. 2019) (same); *Singh v. Barr*, 400 F. Supp. 3d. 1005, 1022 (S.D. Cal. 2019) (same).

a. Petitioner's request for an individualized bond hearing is **GRANTED**;

b. An Immigration Judge shall provide Petitioner with an individualized bond hearing by May 19, 2021, at which the United States will bear the burden of proving by clear and convincing evidence whether Petitioner's continued detention is necessary to protect the community or prevent him from fleeing;

c. Petitioner's request for attorney's fees is **DENIED without prejudice.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: May 18, 2021
at Minneapolis, Minnesota.

_____
JOHN R. TUNHEIM
Chief Judge
United States District Court